BOUDIN, Circuit Judge.
Prabakaran Rasiah is an ethnically Tamil Sri Lankan citizen. He seeks review of a decision by the Board of Immigration Appeals (“BIA”) affirming an order by an Immigration Judge (“IJ”) that denied his applications for asylum, withholding of removal, and relief under the Convention Against Torture (“CAT”). Rasiah sought this relief alleging that he had suffered persecution at the hands of the Sri Lankan army because of his Tamil ethnicity. The background events and proceedings can be briefly summarized.
Rasiah sought to enter the United States on May 4, 2007, in San Juan, Puerto Rico, using a fraudulent non-immigrant visa. Federal authorities began removal proceedings, and Rasiah conceded remova-bility, but applied for asylum, withholding of removal, and CAT relief. Rasiah had an interview with an asylum officer on May 23, 2007, and was granted a hearing before an IJ. The hearing before the IJ occurred on August 22, 2007, and Rasiah was represented by counsel.
Rasiah was the only witness. He testified that he is an ethnically Tamil Sri Lankan and to a number of incidents of past persecution he and family members *3 allegedly suffered at the hands of the Sri Lankan army or others associated with the government: that soldiers beat him and shot his brother and sister; that he had left his job after soldiers inquired into his support for the Tamil Tigers, a rebel group engaged in a long-running armed conflict with the Sri Lankan government; that he was kidnapped, beaten and burned by three men dressed as civilians; and that soldiers shot an alleged relative of his named Kandasamy Gowrivalan.
Rasiah submitted a variety of documents on the current conditions in Sri Lanka, including a United Nations report and articles from newspapers and online sources. Consistent with State Department country reports on Sri Lanka, the materials confirmed that Tamils were sometimes threatened, abused and worse on account of their ethnic status or suspected ties to the Tamil Tigers. After the hearing, Rasiah submitted a memorandum of law reiterating his past persecution claims and claiming, for the first time, asylum eligibility based on a pattern or practice of persecution against Tamils.
The IJ issued an oral decision on October 3, 2007, that denied Rasiah’s application for asylum, withholding of removal, and CAT relief. The IJ found Rasiah’s testimony of past persecution of himself and his family “not credible,” saying she did not believe him; the reasons she gave can be summarized as follows:
that he had failed to provide corroboration for his stories, such as his claims that his brother and sister were shot; that several other Sri Lankan asylum seekers claimed Gowrivalan was a relative and had presented death certificates like the one Rasiah presented in support;
that his claim he would be persecuted in Sri Lanka was undercut by his ability to get a passport from the Sri Lankan government and his experiencing no difficulties when traveling to or from Sri Lanka in the past; and
that there were inconsistencies in his testimony, including about the facts of the alleged kidnapping and his job.
The IJ also found that Rasiah had not met his burden on future persecution.
Rasiah appealed to the BIA where he challenged the IJ’s adverse credibility finding as to his past persecution; argued that he had proved a pattern or practice of persecution of Tamils that the IJ had ignored; and (for the first time) argued that he would be persecuted in Sri Lanka as a failed asylum seeker. The BIA upheld the finding that Rasiah’s accounts of past persecution were incredible, addressed Rasi-ah’s pattern or practice claim by quoting the IJ’s conclusion that simply by being a Tamil Rasiah was not entitled to “a blank check in order to receive asylum,” and held that his claim that he would be persecuted as a failed asylum seeker was never presented to the IJ and so was forfeited.
Rasiah sought review in this court on March 27, 2008, and then on April 3, 2008, filed a motion to reopen the administrative proceedings, claiming that the persecution of Tamils had increased in Sri Lanka and submitting additional documentary evidence of conditions in Sri Lanka. He also argued that his pattern or practice claim turned not on his credibility, but rather on his Tamil ethnicity and objective evidence of the treatment of Tamils. The BIA denied the motion to reopen, observing that the new information did not “ameliorate[ ] the factual bases of the adverse credibility finding.”
Rasiah petitioned to review this denial of the motion to reopen, which we consolidated with his earlier petition contesting the BIA’s decision on the merits. In this court, Rasiah does not challenge the IJ’s *4 factual finding that his testimony about past persecution was incredible. His main argument is that the BIA erred in failing to analyze separately his pattern or practice claim and in failing to remand that issue to the IJ for development. He also argues that the BIA should have decoded his claim that he would be subject to persecution as a failed asylum seeker.
Review of the IJ or BIA’s fact-bound determinations is under the “substantial evidence standard,” Ratnasingam v. Holder, 556 F.3d 10, 13 (1st Cir.2009), which asks whether “any reasonable adjudicator would be compelled to conclude to the contrary,” Budiono v. Mukasey, 548 F.3d 44, 48 (1st Cir.2008) (internal quotation marks omitted). But, as already noted, Rasiah does not dispute the finding that his testimony was incredible and his main objection is to BIA’s alleged failure to decide on the merits his pattern or practice claim. However, the BIA—although more cryptic than the IJ—did permissibly resolve Rasiah’s claim.
Claims based on past persecution, reasonable fear of future persecution or both ordinarily focus on past incidents or future danger involving the asylum seeker or his family, which must be severe enough to constitute “persecution”—a fairly high standard, Nelson v. INS, 232 F.3d 258, 263-64 (1st Cir.2000); the applicant must also show that the persecution that occurred, or is threatened, was “on account of race, religion, nationality, membership in a particular social group, or political opinion,” 8 U.S.C. § 1101(a)(42)(A) (2006); 8 C.F.R. § 208.13(b) (2009). A showing of past persecution creates a rebuttable presumption of future persecution. 8 C.F.R. § 208.13(b)(1).
An applicant can often reinforce his claim of individualized harm or danger by showing that persecution of similarly situated persons has occurred. See Kotasz v. INS, 31 F.3d 847, 852-54 (9th Cir.1994). Thus, a history of violence toward Tamils could help show that violence directed against Rasiah or his family was based on their ethnicity rather than random crime or disorder or that the source was the government or its indifference. Such a showing could also make more credible and rational the fear of the asylum seeker that past incidents would be repeated.
In fact, there is evidence, reflected in both case law and State Department country reports, that ethnic Tamils in Sri Lanka have been subject to incidents of violence in the past attributed to the government or its indifference.[1] As described by the State Department’s 2008 report, “[t]he government has been engaged in a twenty-five year armed conflict with the” Tamil Tigers, which the report describes as a “terrorist organization” controlling “a shrinking area in the north of the country.” As this conflict escalated, “the government’s respect for human rights declined,” and Tamils made up “the overwhelming majority of victims of human rights violations.”[2]
The 2008 report described “frequent harassment of young and middle-aged *5 Tamil men by security forces and paramilitary groups” especially “in the conflict-affected north and east”; among the more serious violations from 2008 noted in the report were approximately 800 civilian casualties, more than 500 disappearances and the detention of several thousand individuals (although the majority were released within 24 hours). So clearly many Tamils — particularly in conflict-afflicted areas — have suffered substantial hardships.
The difficulty for Rasiah is that simply because civil strife causes substantial hardships for an ethnic minority, that does not automatically entitle all members of that minority to asylum. Ratnasingam, 556 F.3d at 14; Kho v. Keisler, 505 F.3d 50, 54 (1st Cir.2007); see also Krishnapillai, 563 F.3d at 620. The governing regulations and the case law do in some extreme cases allow relief for asylum seekers solely based on their membership in a protected group under the pattern or practice rubric, 8 C.F.R. §§ 208.13(b)(2)(h), 208.16(b)(2); Kho, 505 F.3d at 54; however, the standard is demanding and in substance requires a showing of regular and widespread persecution creating a reasonable likelihood of persecution of all persons in the group, see Krishnapillai, 563 F.3d at 620; Kotasz, 31 F.3d at 852.
Attempts by Tamils to meet this standard have been regularly rejected. This circuit has recently sustained BIA findings that treatment of Tamils in Sri Lanka does not rise to the level necessary to establish a pattern or practice claim that standing alone permits relief. Balachandran v. Holder, 566 F.3d 269, 272-73 (1st Cir.2009); Ratnasingam, 556 F.3d at 14-15. Other circuits are in accord. Krishnapillai, 563 F.3d at 620; Vakeesan, 343 Fed.Appx at 127-28, 2009 WL 2591034, at *11; Paramanathan v. U.S. Att’y Gen., 341 Fed.Appx. 613, 617-18, No. 08-13916, 2009 WL 2477762, at *4-5 (11th Cir. Aug. 14, 2009) (per curiam).
The record in this case neither compels a contrary finding nor supports Rasiah’s assertion that his claim was ignored. Rasiah himself raised his pattern or practice claim only after his hearing before the IJ, but the IJ dealt with it exactly as one might expect:
Even though the Country Reports and background information provided by the respondent clearly depicted that Sri Lanka is a country in turmoil, that there [are] abuses from the government, there [are] abuses from the army, there [are] abuses from the Tigers, the respondent, by the fact that he is a Tamil, by the fact he is from Sri Lanka, that does not give him a blank check in order to receive asylum in the United States.
The BIA cited this portion of the IJ’s decision in a footnote, effectively adopting the IJ’s treatment, which was itself adequate in light of the nature of the claim and the case law.
The IJ’s explicit references to “the Country Reports ” and other “background information” and its discussion of conditions in Sri Lanka indicate that the IJ and, in turn, the BIA considered but rejected Rasiah’s pattern or practice claim, see Malek v. Mukasey, 274 Fed.Appx. 1, 7-8 (1st Cir.2008), and Rasiah presented no evidence to distinguish his purported pattern or practice claim from those rejected in Balachandran and Ratnasingam. The treatment of Tamils, however deplorable, is not of a reach that entitles every Tamil in Sri Lanka to asylum based on ethnicity alone.
What Rasiah needed was evidence that he himself had been persecuted or targeted for persecution. With that foun *6 dation, he might well have benefited (in ways described above) from a showing based on country reports or other generalized evidence that Tamils were sometimes persecuted because of their political activities or even their ethnicity alone. But because the IJ disbelieved broadly Rasi-ah’s claims of personal or family persecution — and he does not contest that finding in this court — he has no past persecution or threats of future persecution of him or family members that might gain weight or color from the treatment of others.
An adverse credibility finding by itself would not automatically doom a claim for asylum. For example, an applicant might be disbelieved as to past episodes of persecution while his own (or independent) evidence might show that he faced threats of future persecution — for example, direct threats from government forces — that established both his genuine belief and an objective likelihood that he would be persecuted. Paul v. Gonzales, 444 F.3d 148, 154 (2d Cir.2006). But Rasiah made no such independent showing: the only evidence of harm or threats to him or his family that he offered was the evidence that the IJ disbelieved and there was no evidence of a pattern or practice of persecution of Tamils beyond that our case law already has rejected as insufficient.
The BIA also did not err in denying Rasiah’s motion to reopen the proceedings. Motions to reopen are disfavored and are reviewed only for abuse of discretion. Lemus v. Gonzales, 489 F.3d 399, 401 (1st Cir.2007). Rasiah provided no new evidence as to why he should be believed, see id., and did not show that country conditions had worsened dramatically, see Ratnasingam, 556 F.3d at 15. What he offered was far from the necessary showing of “new evidence [that] establishes a prima facie case for the underlying substantive relief.” Chikkeur v. Mukasey, 514 F.3d 1381, 1383 (1st Cir.2008).
Finally, as already noted, Rasiah contends he is entitled to asylum because he is part of the “particular social group” of “failed asylum seekers.” The BIA held this claim barred because Rasiah failed to raise it before the IJ. He points to nothing that shows he did raise it earlier, so the BIA was on firm ground. Kechichian v. Mukasey, 535 F.3d 15, 21-22 (1st Cir.2008).
The petition for review is denied.

. See, e.g., U.S. Dep't of State, 2008 Country Reports on Human Rights Practices: Sri Lanka (released Feb. 25, 2009); Krishnapillai v. Holder, 563 F.3d 606, 609, 611-13, 620-21 (7th Cir.2009); Balasubramanrim v. INS, 143 F.3d 157, 158-59 (3d Cir.1998); Ravindran v. INS, 976 F.2d 754, 756 (1st Cir.1992).

. In May 2009, the Sri Lankan government declared victory over the Tigers in the conflict, Vakeesan v. Holder, 343 Fed.Appx. 117, 128, n. 6, No. 08-3622, 2009 WL 2591034, at *11, n. 6 (6th Cir. Aug. 21, 2009) (citing Sri Lanka Says Leader of Rebels Has Died, N.Y. Times, May 18, 2009, at A4), so the situation of Tamils may have changed in recent months.