# United States Court of Appeals
## For the First Circuit

No. 09-1463

JOSEPH GEORGES ANACASSUS,

Petitioner,

v.

ERIC H. HOLDER, JR.,
UNITED STATES ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Boudin, and Howard,
Circuit Judges.

Harvey J. Bazile and Bazile & Associates, on brief for petitioner.
Tim Ramnitz, Attorney, U.S. Department of Justice, Civil Division, Office of Immigration Litigation, Tony West, Assistant Attorney General, Civil Division, and Shelley R. Goad, Senior Litigation Counsel, on brief for respondent.

April 15, 2010

**TORRUELLA, <u>Circuit Judge</u>.** Joseph Georges Anacassus ("Anacassus"), a native and citizen of Haiti, petitions for review of a Board of Immigration Appeals' ("BIA") decision affirming an immigration judge's ("IJ") denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Anacassus contends that the record shows sufficient evidence to establish past persecution and/or a well-founded fear of future persecution, and that the BIA abused its discretion in finding otherwise. After careful consideration, we find that the BIA's decision is supported by substantial evidence. We deny the petition for review.

## I. <u>Background</u>[1]

Anacassus attempted to enter the United States on April 15, 2003. He arrived at Miami International Airport with a fraudulent passport and visa. Immigration authorities detained and interviewed him regarding his attempted entry. Anacassus told the interviewing official that he sought political asylum and feared persecution if he should return to Haiti. The immigration officer referred Anacassus to an asylum officer, who determined that Anacassus had established a credible fear of persecution and referred his application to an immigration judge.

---

[1] These facts are drawn from Anacassus's testimony before the IJ.

The Department of Homeland Security ("DHS") served Anacassus with a Notice to Appear ("NTA")[2] and removal proceedings commenced. Anacassus appeared before the Miami Immigration Court and conceded removability, but sought asylum, withholding of removal, and relief under the CAT. After successfully moving for a change of venue to Boston, Massachusetts, Anacassus testified before the immigration judge in support of his asylum application.

Anacassus testified that he had suffered persecution at the hands of former Haitian President Jean-Bertrand Aristide's political party, Lavalas, due to his membership in the opposition party, the Movement for National Development ("MDN")[3]. Lavalas had a militant wing, the Chimere Lavalas, which Anacassus stated often violently disrupted MDN meetings by physically attacking MDN members and throwing rocks or bottles in the air. Anacassus was a regional leader in MDN who assisted in the organization of bi-weekly meetings. He claimed that his role in the MDN garnered Lavalas' attention when, on November 17, 2002, a previously recorded speech was aired on television. In this speech, Anacassus discussed political problems in Haiti, including human rights

---

[2] The NTA charged Anacassus with removability under the Immigration and Nationality Act ("INA") for attempting to procure admission to the United States via fraud or material misrepresentations, INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i), and for seeking admission without valid entry documents, INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I).

[3] The acronym reflects the political party's name in French, the Mouvement pour La Developement National.

violations.  When Anacassus attended an anti-Lavalas demonstration on December 3, 2002, weeks after the speech, he was attacked by Chimere Lavalas members.

According to Anacassus, Chimere Lavalas members beat him at the demonstration, hitting him on the forehead, nose, and cheek with batons and leaving scars on his face and wrists.  Fifteen minutes after arriving, police officers took demonstrators who had been beaten, including Anacassus (although Anacassus later stated he was the only demonstrator beaten), to a police station for protection from further attack.  Afterwards, the police, with Chimere Lavalas members following close behind, took Anacassus to his home.

Anacassus called MDN and informed them of the attack at the demonstration.  MDN broadcast the news to various radio stations later that day.  Meanwhile, a doctor treated Anacassus at his home for his injuries.  At approximately 9:00 p.m., while Anacassus was resting in bed, he heard a banging on the front door and a voice asking his mother where he was.  His mother told the visitor that he was not at home while Anacassus slipped out the back window.  Anacassus later stated that before escaping, he heard his mother being beaten.

Anacassus testified that he first ran to his friend's house, then to his sister's.  On calling home, he learned that his girlfriend and son were "severely beaten."  When asked why his

asylum application failed to mention his son's beating or injuries, Anacassus stated he did not learn about it until February 2003. On being reminded that his asylum application had been filed after February 2003, Anacassus changed his explanation, stating that he chose not to include his son's beating because he had not witnessed it. Anacassus had no explanation, however, as to why his October 2004 affidavit stated that he heard his son being thrown against a wall the night he escaped through the window.

The day after the demonstration and alleged attack at Anacassus's home, Anacassus's mother, girlfriend, and son moved to a different location; Anacassus remained at his sister's. Anacassus testified that, on the same day as the move, his mother took his son to a hospital for treatment. Anacassus offered no medical records to support this testimony. However, other medical records showed his son receiving hospital treatment seven months after the alleged December 2002 treatment. When asked about this discrepancy, Anacassus clarified that his son did not go to the hospital the day after the alleged attacks; rather, he went to an "herb doctor."

Anacassus remained in contact with his mother while he was in hiding. She told him that Chimere Lavalas members came to her new address on repeated occasions and made threats against Anacassus. Because he feared for his life, Anacassus sought assistance from his friend, Symbert, in obtaining a passport and

-5-

visa. Anacassus testified that he never suspected that either the passport or visa that Symbert gave him were invalid when he presented them to immigration authorities at the Miami airport on April 15, 2003.

The IJ denied Anacassus's application for asylum, withholding of removal, and CAT relief and ordered his removal to Haiti. The IJ found that Anacassus failed to meet his burden of proof with credible testimony and failed to establish past persecution, a well-founded fear of future persecution, or that he more likely than not would be tortured on returning to Haiti.

The IJ found Anacassus's testimony regarding his involvement in MDN and the political tensions between MDN and Chimere Lavalas -- including Chimere Lavalas disruption of MDN meetings and the December 2002 attack at the demonstration -- "generally credible." However, the IJ concluded that this "single, isolated event," even if considered with the Chimere Lavalas's harassment of MDN meetings, was not sufficient to constitute past persecution. The IJ found that it also did not establish a well-founded fear of future persecution because, according to at least one of Anacassus's accounts, Haitian police intervened to protect him at the demonstration, indicating that the "authorities in Haiti are willing and able to protect" Anacassus.

The IJ did not find Anacassus's testimony as to the alleged Chimere Lavalas attack at his home, including the alleged

beating of his wife and son, credible. The IJ's credibility finding turned on inconsistencies in Anacassus's testimony, asylum application, airport interview, and credible fear interview. Specifically, the IJ noted the omission of any statement in Anacassus's asylum application, airport interview, and credible fear interview referencing the attack on his wife or son. This was in contrast to his affidavit, which described their beatings as if he had been present, and to his testimony, which provided that he learned about the attacks by telephone "either a few hours or a few months after they occurred." The IJ noted that "[Anacassus] appears to have added details to his claim over time in order to embellish it." Further, the IJ stated that "there is no reliable documentary evidence that Chimere Lavalas members appeared at [Anacassus's] home, attacked his family, or continue to pursue him." Because of inconsistencies in his accounts and a lack of supporting evidence, the IJ determined that Anacassus could not show past persecution or a well-founded fear of future persecution. The IJ concluded that, as Anacassus could not meet the "well-founded fear" asylum standard, he also could not meet the higher, "more likely than not" standard for withholding of removal or CAT relief. Thus, the IJ denied his withholding of removal and CAT claims.

Anacassus appealed to the BIA. He challenged the IJ's adverse credibility finding, claiming the inconsistencies on which

the IJ focused were not relevant to his asylum claim; argued that the IJ failed to consider Anacassus's testimony that he was the only person attacked at the demonstration; and argued that the police did not protect him at the demonstration, but conspired with the Chimere Lavalas as to the demonstration and home attack. The BIA upheld the lack of credibility finding as to Anacassus's account of the home attack, noting that the inconsistencies in Anacassus's account went to the heart of his asylum claim. It rejected Anacassus's claim that the IJ failed to consider he was the only one hurt at the demonstration, citing inconsistencies in his testimony where he referenced other demonstrators' beatings. Lastly, it noted that Anacassus admitted to receiving police protection at the demonstration. The BIA affirmed the IJ's ruling that Anacassus failed to demonstrate either past persecution or a well-founded fear of future persecution, as well as the IJ's determination as to withholding and CAT relief. Anacassus petitioned this court for review.

## II. **Discussion**[4]

### A. **Standard of Review**

We review <u>de novo</u> the BIA's legal rulings, but defer to its "findings of fact and the determination as to whether the facts support a claim of persecution." <u>Jorgi</u> v. <u>Mukasey</u>, 514 F.3d 53, 57 (1st Cir. 2008). The BIA's fact-bound determinations, including credibility findings, will be upheld, provided that they are supported "by reasonable, substantial, and probative evidence on the record considered as a whole," <u>Attia</u> v. <u>Gonzales</u>, 477 F.3d 21, 23 (1st Cir. 2007) (internal quotation marks omitted), such that no "reasonable adjudicator would be compelled to conclude to the contrary," <u>Rasiah</u> v. <u>Holder</u>, 589 F.3d 1, 4 (1st Cir. 2009) (internal quotation marks omitted). Where "the BIA adopts the IJ's opinion and discusses some of the bases for the IJ's decision, we have authority to review both the IJ's and BIA's opinions." <u>Decky</u> v. <u>Holder</u>, 587 F.3d 104, 109 (1st Cir. 2009) (internal quotation marks omitted).

---

[4] Following the tragic earthquake that struck Haiti on January 12, 2010, the United States government issued a rule designating Haiti for temporary protected status ("TPS") for a period of eighteen months. Designation of Haiti for Temporary Protected Status, 75 Fed. Reg. 3476 (Jan. 21, 2010). Anacassus may fulfill the criteria for TPS. However, Anacassus's TPS eligibility is not before us, and so we do not address the possible effect of the TPS statute on his removal status.

-9-

**B. Asylum**

Anacassus's essential claim on appeal is that the IJ and BIA improperly denied his application for asylum.[5] To establish eligibility for asylum, Anacassus bears the burden of proving that he is a refugee under the Immigration and Nationality Act. See 8 U.S.C. § 1158(b)(1)(B)(i); see also Weng v. Holder, 593 F.3d 66, 71 (1st Cir. 2010). To qualify as a refugee, Anacassus must show "either that he has suffered past persecution or has a well-founded fear of future persecution on the basis of 'race, religion, nationality, membership in a particular social group, or political opinion.'" Decky, 587 F.3d at 110 (quoting Journal v. Kiesler, 507 F.3d 9, 12 (1st Cir. 2007)). "A showing of past persecution gives rise to a presumption of future persecution unless rebutted." Jorgi, 514 F.3d 53 at 57 (citing 8 C.F.R. § 208.13(b)(1)).

**1. Past Persecution**

Persecution "'encompasses more than threats to life or freedom, but less than mere harassment or annoyance.'" Sok v.

---

[5] Because Anacassus's arguments on appeal focus entirely on his asylum claim, and he develops no arguments to support either his claim for withholding of removal or his claim for relief under the CAT, we deem these claims abandoned. See Nikijuluw v. Gonzales, 427 F.3d 115, 120 n.3 (1st Cir. 2005); Topalli v. Gonzales, 417 F.3d 128, 131 n.3 (1st Cir. 2005) ("[Petitioner's] challenge is to the BIA's dismissal of his appeal as a whole, but he offers no arguments with respect to his claims for withholding of removal or protection under the CAT. He has therefore waived any challenge to the BIA's denial of these claims."); see also Usman v. Holder, 566 F.3d 262, 268 (1st Cir. 2009) ("An argument that the petitioner is entitled to asylum does not properly raise the issue of withholding of removal.").

Mukasey, 526 F.3d 48, 53 (1st Cir. 2008) (quoting Aquilar-Solís v. I.N.S., 168 F.3d 565, 570 (1st Cir. 1999)).  Further, it "does not include all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional."  Sharari v. Gonzáles, 407 F.3d 467, 474 (1st Cir. 2005) (quoting Fatin v. I.N.S., 12 F.3d 1233, 1240 (3d Cir. 1993)).  To establish past persecution, "the totality of a petitioner's experiences [must] add up to more than mere discomfiture, unpleasantness, harassment, or unfair treatment."  Nikijuluw, 427 F.3d at 120.

"In determining whether alleged incidents rise to the level of persecution, one important factor is whether 'the mistreatment can be said to be systematic rather than reflective of a series of isolated incidents.'"  Journal, 507 F.3d at 12 (citing Bocova v. Gonzales, 412 F.3d 257, 263 (1st Cir. 2005)).  Here, Anacassus' credible testimony[6] provided a single incident of personal violence, specifically, the beating at the anti-Lavalas political demonstration.  The IJ also found Anacassus's testimony concerning "the level and type of his involvement with the MDN [and] the harassment . . . MDN members endured at their meetings"

---

[6]  "'Because the immigration judge is in the best position to evaluate an alien's testimony, his or her credibility determinations are to be given much weight.'" Syed v. Ashcroft, 389 F.3d 248, 251 (1st Cir. 2004) (quoting Estrada v. I.N.S., 775 F.2d 1018, 1021 (9th Cir. 1985)).

-11-

to be "generally credible."[7]  Although the IJ found that tensions existed between the respective political parties at issue, Anacassus's argument on appeal is limited to his beating at the demonstration, and does not address the general harassment by Lavalas members at the MDN meetings.  Thus, on this appeal, we only address the attack Anacassus suffered at the demonstration.  The IJ found, and the BIA affirmed, that the beating constituted a single, isolated incident that was not sufficient to rise to the level of persecution.  Our case law does not compel the opposite conclusion. See Khan v. Mukasey, 549 F.3d 573, 576 (1st Cir. 2008) ("The record supports a conclusion that Khan's [single incident of alleged] mistreatment was an isolated event," supporting a finding of no persecution); Journal, 507 F.3d at 12 (no persecution where petitioner "alleged only one incident of violence in which he was struck on the head and arms"); see also Attia, 477 F.3d at 24 ("two altercations in a nine-year period and a general climate of discrimination" not sufficient to establish past persecution); Nelson v. I.N.S., 232 F.3d 258, 264 (1st Cir. 2000) (no past

---

[7]   Here, Anacassus sets forth no arguments nor raises any challenges to the IJ and/or BIA's determination that Anacassus's testimony regarding the Chimere Lavalas attack at his home and against his family members was not credible.  Because "[i]t is well-established that 'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived,'" we deem any challenge to the IJ and BIA's credibility determinations as to the home attack waived.  Nikijuluw, 427 F.3d at 120 n.3 (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)).

persecution where petitioner physically abused during three incidents of solitary confinement and victim of surveillance, harassment, and stops and searches).

We note that although the full extent of Anacassus's injuries from the attack are unclear -- with Anacassus claiming that a doctor made an undocumented visit to treat his injuries following the attack and that any scars from the beating were healed by his sister's "good soap" -- "isolated beatings, even when rather severe, do not establish systematic mistreatment needed to show persecution." Wiratama v. Mukasey, 538 F.3d 1, 7 (1st Cir. 2008). Thus, in light of our case law, we are compelled to conclude that Anacassus's single, isolated beating does not rise to the level of persecution. See Decky, 587 F.3d at 111 (no persecution where, during 1998 riots, ethnic Chinese Indonesian was physically beaten, his motorcycle was set on fire, and his persecutors chanted at him, "kill Chinese"); Khan, 549 F.3d at 575-77 (no persecution where petitioner arrested for attending political demonstration, detained for ten days, and submitted to beatings with wooden sticks and electrical shocks); see also Topalli, 417 F.3d at 132 (no persecution where petitioner arrested on multiple occasions over two year period, submitted to detentions lasting less than 24 hours, and suffered beatings that did not require hospitalization).

Furthermore, Anacassus's past persecution claim is "doubly deficient." Orelien v. Gonzales, 467 F.3d 67, 72 (1st Cir. 2006). Persecution requires a showing of mistreatment that has "some connection to government action or inaction," Harutyunyan v. Gonzales, 421 F.3d 64, 68 (1st Cir. 2005); that is, "the harm suffered [must be] the direct result of government action, government-supported action, or government's unwillingness or inability to control private conduct." Sok, 526 F.3d at 53 (internal quotation marks omitted). Here, Anacassus testified that police at the demonstration arrested him to protect him from the attacks; that they placed him in a car and brought him to the police station to remove him from the crowds; and that they subsequently escorted him home. Furthermore, in his appellate brief, Anacassus stated that "he would have been killed on the spot were it not for the timely intervention of the Haitian police." Because Anacassus fails to show that the alleged persecutors at the demonstration, Lavalas, were "in league with the government or [were] not controllable by the government," Silva v. Ashcroft, 394 F.3d 1, 7 (1st Cir. 2005), his petition also lacks the "necessary link between persecution and governmental action or inaction" so as "to establish the well-founded fear of persecution required for asylum." Burbiene v. Holder, 568 F.3d 251, 255-56 (1st Cir. 2009).

## 2. Well-Founded Fear of Future Persecution

Because we affirm the BIA's finding that Anacassus failed to establish past persecution, he is not entitled to the rebuttable presumption that his fear of future persecution is well-founded. See 8 C.F.R. § 208.13(b)(1)(i); Decky, 587 F.3d at 110. Thus, Anacassus bears the burden of showing a well-founded fear of future persecution through both subjective and objective factors, that is, he "must demonstrate not only that [he] harbors a genuine fear of future persecution but also that [his] fear is objectively reasonable." Negeya v. Gonzales, 417 F.3d 78, 82-83 (1st Cir. 2005). Anacassus has not met this burden. Anacassus's only argument to support his claim of future persecution is that, because the record shows past persecution, he is entitled to a presumption of future persecution. However, substantial evidence supports the agency's conclusion that Anacassus's only credible, alleged incident of persecution was insufficient for purposes of establishing either past persecution or a well-founded fear of future persecution if he should return to Haiti. Limani v. Mukasey, 538 F.3d 25, 31 (1st Cir. 2008).

## III. Conclusion

Because substantial evidence in the record supports the BIA's holding, Anacassus's petition for review is **DENIED**.

-15-