# United States Court of Appeals
## For the First Circuit

No. 13-1081

RITA NELLY CONSTANZA DE ABARCA,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Lynch, <u>Chief Judge</u>,
Stahl and Lipez, <u>Circuit Judges</u>.

<u>Stephen M. Born</u> on brief for petitioner.
<u>Stuart F. Delery</u>, Assistant Attorney General, Civil Division,
<u>William C. Peachey</u> and <u>Lindsay Corliss</u>, Office of Immigration
Litigation, on brief for respondent.

July 9, 2014

**LIPEZ, Circuit Judge**.  Rita Nelly Constanza de Abarca, a citizen of El Salvador, entered the United States without being admitted or paroled.  Detained after an Immigration and Customs Enforcement raid at her place of employment, she subsequently filed applications for asylum, withholding of removal, and relief under the Convention Against Torture.  An Immigration Judge denied Constanza's applications for relief; the Board of Immigration Appeals subsequently dismissed her appeal.  Constanza now petitions for review of the BIA's order.  Applying the deferential standard of review that we must accord to the agency's factfinding, we deny the petition.

## I.

We briefly recount the facts as alleged by petitioner and credited by the Immigration Judge.[1]  Rita Nelly Constanza de Abarca ("Constanza") is a citizen of El Salvador who has three sons -- Jairo (approximately 14 years old at the time she left El Salvador), Marlon (12), and Francisco (11).  On March 23, 2006, she entered the United States without inspection, seeking economic opportunity that would allow her to bring her sons, left behind with their grandparents, to the United States.  As her eldest son Jairo was getting older, he was facing increasing pressure to join

---

[1] The Immigration Judge found petitioner to be credible and therefore accepted her version of the facts.  The Attorney General does not challenge this credibility determination or dispute the facts as alleged by petitioner.

one of the prominent gangs, or "maras," in El Salvador. She wanted to remove her sons from those dangerous conditions.

On March 6, 2007, agents from United States Immigration and Customs Enforcement raided a factory where Constanza worked. She was arrested and detained for nine days. During her detention, Constanza contacted her sons in El Salvador and learned that while she had been in the United States, one of the maras (specifically the MS-13 gang) had been aggressively recruiting Jairo. He had resisted their efforts. As a result, the gangmembers had threatened him and his brothers with violence.

In February 2008, Constanza applied for asylum, as well as withholding of removal and relief under the Convention Against Torture ("CAT"), relying on the perceived threat of violence from the maras against her if she returned to El Salvador and her son continued to resist joining them. That same year, after MS-13 attempted to frame Jairo for a murder, he fled to the United States. In response, MS-13 threatened to kill Constanza's other children if they did not reveal Jairo's whereabouts. Marlon and Francisco stopped attending school to avoid the maras. Constanza believes that Jairo's absence would make her the primary target of the maras' violence if she were to return to El Salvador.

On March 7, 2011, the Immigration Judge ("IJ") held a hearing on Constanza's case. Though the IJ determined that her

application for asylum was time-barred,[2] she assumed arguendo that Constanza timely filed her asylum application or established an exception to the time bar, and proceeded to the merits. Constanza was the only person to testify in support of her application, recounting the events and circumstances described above. The IJ found Constanza to be a credible witness, but nonetheless found her ineligible for asylum. Specifically, the IJ concluded that the particular social group to which she belonged ("mother[s] of [] individual[s] who resisted gang activity") was overly broad and lacking in the requisite social visibility to be the basis for persecution, that she had not experienced past persecution, and that she had failed to prove a well-founded fear of future persecution. On that basis, the IJ concluded that Constanza was not entitled to asylum, withholding of removal, or relief under CAT.

Constanza appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). On December 19, 2012, the BIA upheld the IJ's decision on slightly different reasoning. The BIA first

---

[2] Pursuant to 8 U.S.C. § 1158(a)(2)(B) an asylum applicant must demonstrate "by clear and convincing evidence that the application has been filed within 1 year after the date of the [applicant's] arrival in the United States." Constanza arrived in the United States on March 23, 2006, and did not apply for asylum until February 12, 2008, well after the one-year deadline. The IJ found that Constanza failed to show "extraordinary circumstances" or "changed circumstances" that would warrant an exception to the time bar under § 1158(a)(2)(D). This time bar did not apply to her applications for withholding of removal and relief under CAT.

remarked that the IJ did not, as Constanza claimed, misunderstand the social group that Constanza had invoked. Nevertheless, the BIA, responding to its understanding of Constanza's claim, defined the social group at issue as the "nuclear family," a narrower social group than "mother[s] of [] individual[s] who resisted gang activity," the group cited by the IJ. The BIA acknowledged that, under First Circuit precedent, the nuclear family can be a social group that is the target of persecution, Gebremichael v. INS, 10 F.3d 28, 36 (1st Cir. 1993), but nonetheless found that Constanza failed to show causation -- namely, that she would be persecuted as a result of her kinship. The BIA also affirmed the denial of withholding of removal and relief under CAT, which require a higher burden of proof. The BIA thus ordered Constanza removed to El Salvador. This timely appeal followed.

## II.

We review on appeal "the BIA's decision as well as any portions of the IJ's opinion adopted by the BIA." Peña-Beltre v. Holder, 622 F.3d 57, 61 (1st Cir. 2010). We examine the BIA's legal conclusions de novo and its factual findings under the substantial evidence standard, Soeung v. Holder, 677 F.3d 484, 487 (1st Cir. 2012), accepting the agency's factfinding unless the evidence "would compel a reasonable factfinder to reach a contrary conclusion," Seng v. Holder, 584 F.3d 13, 17 (1st Cir. 2009).

-5-

A noncitizen seeking asylum "must establish his or her status as a refugee." Soeung, 677 F.3d at 487. A refugee is defined as a noncitizen who is unwilling or unable to return to her country of origin or seek that country's protection "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Conceding that she was not subject to past persecution, Constanza rests her case on a fear of future persecution.

Without evidence of past persecution, Constanza is not entitled to a presumption that she will face future persecution. Anacassus v. Holder, 602 F.3d 14, 21 (1st Cir. 2010). She may nonetheless "prevail on an asylum claim by proving, simpliciter, a well-founded fear of future persecution independent of any presumption[, which] . . . requires the alien to demonstrate that h[er] fear of future persecution is both subjectively and objectively reasonable." Orelien v. Gonzales, 467 F.3d 67, 71 (1st Cir. 2006). We have said that a petitioner can meet this burden "through an offer of 'specific proof.'" Castillo-Diaz v. Holder, 562 F.3d 23, 26 (1st Cir. 2009) (quoting Romilus v. Ashcroft, 385 F.3d 1, 6 (1st Cir. 2004)).

Constanza sought to establish "a well-founded fear of persecution on account of . . . membership in a particular social group." 8 U.S.C. § 1101(a)(42)(A). As noted, there was some

-6-

confusion as to the definition of the social group invoked by Constanza, who claimed that she would be persecuted because she was related to someone (her son) who resisted gang recruitment efforts. This group could be defined narrowly (her specific nuclear family) or more broadly ("mother[s] of [] individual[s] who resisted gang activity").

For the purpose of evaluating her claimed fear of future persecution, the IJ and BIA both correctly rejected the broadly conceived social group based on our previous holding that a similarly defined group was overly broad. See, e.g., Tay-Chan v. Holder, 699 F.3d 107, 112 (1st Cir. 2012) (finding no error where the claimed social group was "victims of gang threats and possible extortion," and the BIA rejected "this purported 'social group' as overly broad and having insufficient particularity to meet the social group criterion").

As for her nuclear family claim, Constanza emphasized that the relevant social group could simply be the "de Abarca" family. See Gebremichael, 10 F.3d at 36 ("There can, in fact, be no plainer example of a social group based on common, identifiable and immutable characteristics than that of the nuclear family."). Although the IJ did not acknowledge this argument, the BIA addressed it, correctly emphasizing that any feared future persecution would have to be causally related to that kinship.

As evidence of future persecution based on her family ties, Constanza relied on the information relayed to her by her sons about their interactions with the maras in El Salvador. MS-13 threatened violence, including death, against her sons in an attempt first to recruit and then to locate Jairo. They also attempted to extort money from Jairo, imploring him to have his mother send fifty dollars from the United States. She also testified that MS-13 tried to frame Jairo for murder, causing him to flee and leaving her two remaining sons in such fear that they stopped attending school. In addition to these events reported to her by her sons, Constanza introduced more general evidence about gang violence in El Salvador, including violent acts perpetrated against family members.

The BIA concluded that this evidence was too speculative to show a well-founded fear of future persecution. Despite the reported threats and attempted extortion, Jairo himself was not seriously harmed rising to the level of persecution. If the other family members in El Salvador had not yet been persecuted, the notion that Constanza herself would be persecuted upon her return was too speculative. The BIA further concluded that a fear of harm resulting from general conditions of violent crime does not constitute a fear of persecution on account of membership in a particular social group. Her testimony suggested to the BIA that the violent reputation of the maras contributed to her fear at

least as much as the specific events recounted by her sons.  Such a generalized fear cannot be the basis for a claim of feared future persecution.  See, e.g., Vasili v. Holder, 732 F.3d 83, 91 (1st Cir. 2013) ("General criminal activity is not evidence of a well-founded fear of . . . persecution.").

We find no fault with the BIA's analysis.  Certainly, the evidence of future persecution based on Constanza's membership in her nuclear family was not so strong as to "compel a reasonable factfinder to reach a contrary conclusion" to the BIA as to the speculative nature of her fear.  Seng, 584 F.3d at 17.  Accordingly, we must deny the petition for asylum.  Because Constanza has failed to demonstrate that she is eligible for asylum, her claims for withholding of removal and relief under CAT also fail.  See Singh v. Mukasey, 543 F.3d 1, 7 (1st Cir. 2008) (observing that claims for withholding and CAT protection "place a higher burden of proof on the petitioner than a counterpart claim for asylum" and stating that petitioner's failure to establish eligibility for asylum similarly doomed those claims); Barsoum v. Holder, 617 F.3d 73, 80-81 (1st Cir. 2010).

The petition is denied.

**So ordered.**