**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 15-1501

GLORIA ESPERANZA PINEDA-HERNANDEZ,

Petitioner,

v.

LORETTA E. LYNCH,
Attorney General of the United States,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Howard, <u>Chief Judge</u>,
Selya and Thompson, <u>Circuit Judges</u>.

Hans J. Bremer and Bremer Law & Associates, LLC on brief for petitioner.
Paul Fiorino, Senior Litigation Counsel, Office of Immigration Litigation, United States Department of Justice, Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, and Douglas E. Ginsburg, Assistant Director, on brief for respondent.

September 29, 2016

**Per Curiam**.     Petitioner Gloria Esperanza Pineda-Hernandez ("Pineda"), a native and citizen of Honduras, asks us to review a Board of Immigration Appeals ("BIA") order denying her claims for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT").    After careful consideration of the briefs and the record, we deny the petition.

## I.

Pineda entered the United States unlawfully in March 2012 and was subsequently served with a Notice to Appear charging her as removable pursuant to Immigration and Nationality Act § 212(a)(7)(A)(i).    In response, Pineda conceded removability and sought asylum, withholding of removal, and protection under the CAT.

In support of these claims, Pineda alleged that, two or three months before she left Honduras, she had been touched sexually, pushed to the ground, and threatened by a member of the Mara Salvaltrucha gang named "El Peludo."[1]    Pineda expressed her belief that El Peludo would also have raped her had another man not come to her assistance.    Pineda did not report the attack to

---

[1] Pineda also testified that she had previously interacted with El Peludo on just two occasions.  During the first, at a party, he repeatedly asked her to dance and stared at her after she refused.  During the second, he approached her on the street and asked her to live with him.

the local authorities, believing that the police would not do anything to help her and fearing that El Peludo and his fellow gang members would retaliate against her if she did.[2]  Although Pineda did not encounter El Peludo again after the assault, she stated that she still feared he would rape or kill her.

The immigration judge ("IJ") found Pineda credible but ineligible for relief.  The IJ reasoned that Pineda's experiences did not rise to the level of persecution and that, even if they did, she had not established a nexus to a protected ground.

The BIA subsequently affirmed, emphasizing that although the evidence reflected that Pineda "was the victim of a criminal act by a gang member who sought a relationship with her," it did not support a claim that she had suffered past persecution or that she was targeted on account of any protected ground.  This petition timely followed.

**II.**

Where, as here, the BIA issues its own opinion, we focus on the decision of the BIA as opposed to that of the IJ.  Pulisir v. Mukasey, 524 F.3d 302, 307–308 (1st Cir. 2008).  In reviewing a BIA decision, we ask whether it is "supported by reasonable, substantial, and probative evidence on the record considered as a

_____

[2] Additionally, the record shows that the police station was approximately 25 to 30 minutes away from Pineda's home in Agua Azul.

whole." Thapaliya v. Holder, 750 F.3d 56, 59 (1st Cir. 2014). If it is, we will uphold it. Under this deferential standard, the fact that "the record supports a conclusion contrary to that reached by the BIA is not enough to warrant upsetting the BIA's view of the matter; for that to occur, the record must compel the contrary conclusion." Lopez de Hincapie v. Gonzales, 494 F.3d 213, 218 (1st Cir. 2007).

In order to qualify for asylum, an applicant must establish either past persecution or a well-founded fear of future persecution if repatriated, on account of one of five enumerated grounds, including membership in a particular social group. See 8 U.S.C. § 1101(a)(42)(A). The asylum statute "is not intended to protect aliens from violence based on personal animosity." Romilus v. Ashcroft, 385 F.3d 1, 6 (1st Cir. 2004); accord Guerra-Marchorro v. Holder, 760 F.3d 126, 128-29 (1st Cir. 2014). Thus, Pineda bears the burden of showing both that she was persecuted and that there was a "nexus" between the persecution and one of the statutorily protected grounds. See Lopez de Hincapie, 494 F.3d at 217. Further, the government must be implicated for harm to qualify as persecution. Barsoum v. Holder, 617 F.3d 73, 79 (1st Cir. 2010). And that is the problem for Pineda, because the harms she suffered were, on her own account, inflicted solely by El Peludo, without the government's involvement, complicity, or condonation. See id. at 80. Although Pineda's reluctance to

report the sexual assault was understandable, her decision not to involve the police made it impossible for the Honduran government to respond. Cf. Castillo-Diaz v. Holder, 562 F.3d 23, 25 (1st Cir. 2009) (denying petition for review of a kidnapping and rape victim, in part because no police report had been filed). Absent a showing of past persecution, Pineda is not entitled to a presumption that her fear of future persecution is well-founded. See Barsoum, 617 F.3d at 80; see also 8 C.F.R. §208.13(b)(1).

Because Pineda has not carried her burden of showing that she suffered past persecution or has a well-founded fear of future persecution, we need not reach the question of whether harm has occurred (or is anticipated to occur) "on account of" her membership in a particular social group.

Because Pineda failed to carry the burden of persuasion for the asylum claim, her counterpart claim for withholding of removal necessarily fails. See Villa-Londono v. Holder, 600 F.3d 21, 24 n.1 (1st Cir. 2010).

This brings us to Pineda's final claim. The BIA concluded that Pineda had not established eligibility for protection under the CAT, explaining that she failed to "demonstrate[] that she is more likely than not to be tortured in Honduras, by or with the acquiescence . . . of a government official." The record amply supports this conclusion. Pineda has not adduced any evidence that her potential torturers — El Peludo

and, possibly, his fellow Mara gang members — are state actors or, alternatively, that the authorities would in some way be complicit in her torture. This is important because, without minimizing Pineda's unfortunate situation, the mere infliction of harm does not constitute torture within the meaning of the CAT. Rather, such injury meets this definition only if the harm "is inflicted by, at the direction of, or with the acquiescence of government officials." Lopez de Hincapie, 494 F.3d at 221.

## III.

For the foregoing reasons, we deny Pineda's petition for review.