# United States Court of Appeals
## For the First Circuit

No. 11-2253

MARIA GUAMAN-LOJA,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Lynch, <u>Chief Judge</u>,
Boudin[*] and Lipez, <u>Circuit Judges</u>.

<u>Brian Monahan</u> and <u>Ross & Associates</u> on brief for petitioner.
<u>Tony West</u>, Assistant Attorney General, Civil Division, <u>Anthony C. Payne</u> and <u>Tiffany L. Walters</u>, Office of Immigration Litigation, on brief for respondent.

February 7, 2013

---

[*] Judge Boudin participated in the semble in this matter, but he did not participate in the issuance of the panel's opinion. The remaining two panelists therefore issued the opinion pursuant to 28 U.S.C. § 46(d).

**LIPEZ**, **Circuit Judge**.  Maria Guaman-Loja, a native and citizen of Ecuador, entered the United States without being admitted or paroled.  She was placed into removal proceedings and filed applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").  An immigration judge ("IJ") denied Guaman-Loja's applications for relief, and the Board of Immigration Appeals ("BIA") subsequently dismissed her appeal.  Guaman-Loja now petitions for review of the BIA's order.  Under the deferential standard of review we accord to the agency's factfinding, we deny the petition.

**I.**

We briefly recount the facts found by the agency.  Guaman-Loja is an Ecuadorian woman of indigenous descent whose primary language is Quechua.  After completing her education, she became active in the organization of fellow indigenous people in her local community during the 1980s.  These activities were primarily literacy-related and she spent much of her time teaching fellow indigenous people how to read and write.

Due to Guaman-Loja's activities, she and her family received a number of threats from individuals of Mestizo ancestry.[1]  On one occasion, one of these individuals slapped Guaman-Loja in the face and warned her that she should cease her community and

---

[1] Although the term "Mestizo" carries multiple definitions, Guaman-Loja used the word to refer to individuals with Spanish ancestry.

educational activities.[2]  Guaman-Loja testified that her family members were assaulted and also threatened.

Guaman-Loja and her husband attempted to relocate within Ecuador on several occasions to escape further threats.  Her alleged persecutors continued to seek her out and threaten her.  Fearing for her continued safety, she entered the United States without inspection on or about April 10, 2003.

When she was later placed into removal proceedings, she applied for asylum, withholding of removal, and relief under CAT in May 2006.  The IJ held a hearing on the matter, where Guaman-Loja was the only witness.  At the hearing's end the IJ issued an oral decision denying Guaman-Loja's application for asylum on two grounds.  First, the IJ held that her application had not been filed within one year of her entry into the United States, as required by statute, and that she had not demonstrated changed circumstances justifying waiver of that requirement.  Second, the IJ denied her application on the merits.  The IJ ruled that the harms Guaman-Loja had suffered in Ecuador were not drastic enough to rise to the level of persecution, and that she had failed to demonstrate a fear of future persecution if she returned.  Additionally, nothing in the record indicated that the harassment

---

[2] Although the IJ's decision discusses only one incident when Guaman-Loja was physically struck, Guaman-Loja avers in an affidavit that the same woman struck her while she was visiting her family in 2002, a number of years after the incident mentioned in the IJ's decision.

she experienced had come about as a result of government action or inaction.

Guaman-Loja appealed to the BIA, which upheld the IJ's decision. As to the timely filing of her application, the BIA ruled that Guaman-Loja had "not shown extraordinary circumstances for the delay" in seeking asylum, a showing that could have avoided application of the one-year bar. As for the merits of Guaman-Loja's claim, the BIA stated that she had not demonstrated that she had suffered persecution, or that mistreatment of indigenous people in Ecuador "is so systemic or pervasive as to amount to a pattern or practice of persecution" on the part of the Ecuadorian government. This timely appeal followed.

## II.

We review on appeal "the BIA's decision as well as any portions of the IJ's opinion adopted by the BIA." Peña-Beltre v. Holder, 622 F.3d 57, 61 (1st Cir. 2010). We examine the BIA's legal conclusions de novo and its factual findings under the substantial evidence standard, Soeung v. Holder, 677 F.3d 484, 487 (1st Cir. 2012), accepting the agency's factfinding unless the evidence "would compel a reasonable factfinder to reach a contrary conclusion." Seng v. Holder, 584 F.3d 13, 17 (1st Cir. 2009).

## A.  Guaman-Loja's Claims of Persecution

Guaman-Loja contends that the agency erred in concluding that she was ineligible for asylum.[3]  A noncitizen seeking asylum "must establish his or her status as a refugee."  Soeung, 677 F.3d at 487.  A refugee is defined as a noncitizen who is unwilling or unable to return to her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1101(a)(42)(A).  "A showing of past persecution gives rise to a rebuttable presumption of future persecution."  Vanchurina v. Holder, 619 F.3d 95, 99 (1st Cir. 2010).  Absent evidence of past persecution, a petitioner must provide "specific proof" that his or her fear of future persecution "is both subjectively genuine and objectively reasonable."  Decky v. Holder, 587 F.3d 104, 110 (1st Cir. 2009) (quoting Castillo-Diaz v. Holder, 562 F.3d 23, 26 (1st Cir. 2009)) (internal quotation marks omitted).

---

[3] Guaman-Loja challenges the threshold determination that her asylum application was untimely filed, citing the BIA's apparent application of the "extraordinary circumstances" exception to the one-year bar.  See 8 C.F.R. § 1208.4(a)(5).  The agency may have mistakenly addressed a claim that Guaman-Loja did not actually make; she in fact attempted to invoke the "changed circumstances" exception, which requires a different showing.  See id. § 1208.4(a)(4).  Because the agency denied her asylum claim on the merits, however, we need not address the significance of this possible error.  See Beltrand-Alas v. Holder, 689 F.3d 90, 94 (1st Cir. 2012) (upholding BIA's decision on one independent ground and declining to address alternative ground of agency decision); Matos-Santana v. Holder, 660 F.3d 91, 94 n.2 (1st Cir. 2011) (same).

We have stated that a noncitizen must have experienced something more than "ordinary harassment, mistreatment, or suffering" to demonstrate persecution. Lopez de Hincapie v. Gonzales, 494 F.3d 213, 217 (1st Cir. 2007). "The severity, duration, and frequency of physical abuse are factors relevant to this determination, as is whether harm is systematic rather than reflective of a series of isolated incidents." Barsoum v. Holder, 617 F.3d 73, 79 (1st Cir. 2010) (citations omitted) (internal quotation marks omitted).

Guaman-Loja bases her asylum claim on her activities on behalf of the indigenous community of Ecuador. The agency examined Guaman-Loja's evidence regarding the threats she had received from individuals who wanted her to cease her educational activities, as well as the physical assaults she had experienced.[4] This evidence does indicate that she personally experienced threats and harassment on multiple occasions. However, the record supports the conclusion that these incidents, while no doubt burdensome and troubling, were not severe or frequent enough to amount to

_____

[4] Although the IJ is typically required to determine whether an asylum applicant's testimony is credible, "[t]he lack of a credibility determination is a cause for concern only when a claim turns on the veracity of the alien." Morgan v. Holder, 634 F.3d 53, 57 (1st Cir. 2011). Here, the IJ appears to have accepted all of Guaman-Loja's testimony, but concluded that it was insufficient to establish her status as a refugee. "[A] credibility determination is superfluous when the alien's testimony, even if taken at face value, is insufficient to compel an entitlement to relief." Id.

persecution. The record also includes evidence regarding assaults on some of her family members, but it appears that the last of these attacks occurred in 1991, about twelve years before she came to the United States. Even assuming that these attacks were connected to her family members' political affiliations, the ability of petitioner and her family members to avoid harassment for such a lengthy period of time undermines any inference of persecution. We therefore agree that "[t]he BIA was not compelled to find that the harms [the petitioner] suffered, even viewed collectively, rose to the level of persecution." Barsoum, 617 F.3d at 80.

Guaman-Loja asserts that the agency made an error of law when it excluded evidence of psychological and emotional harm from its calculus. See Makhoul v. Ashcroft, 387 F.3d 75, 80 (1st Cir. 2004) ("[W]e acknowledge that, under the right set of circumstances, a finding of past persecution might rest on a showing of psychological harm."). Nothing in the agency's opinion supports the contention that it did so, however. In fact, the BIA explicitly addressed the threats made to Guaman-Loja and her family members, concluding that they did not "amount to persecution." Although the BIA's opinion was relatively brief, "we will not require that it address specifically each claim the petitioner made or each piece of evidence the petitioner presented." Martinez v. INS, 970 F.2d 973, 976 (1st Cir. 1992). Without any indication

-7-

that the agency erroneously refused to consider certain aspects of her testimony, Guaman-Loja's argument reduces to a dispute with the agency's factfinding.  As we have explained, we see no issue with the agency's view of the facts.

Without evidence of past persecution, Guaman-Loja is not entitled to a presumption that she will face future persecution. Anacassus v. Holder, 602 F.3d 14, 21 (1st Cir. 2010).  Guaman-Loja's evidence of likely future persecution is similarly insufficient.  She cites her brother, who purportedly left Ecuador and came to the United States due to discrimination he had suffered because of his indigenous background.  This brother subsequently returned to Ecuador, where he died in a car accident under mysterious circumstances in October 2008.  Although Guaman-Loja seeks to link his death to his political activity on behalf of indigenous individuals, this theory of his death relies entirely on speculation and inferences.  "Merely identifying alternative findings that could be supported by substantial evidence is insufficient to supplant the [IJ's] findings." Albathani v. INS, 318 F.3d 365, 372 (1st Cir. 2003).  Accordingly, we discern no error in the agency's conclusion as to future persecution as well.

## B.  State Involvement in Guaman-Loja's Persecution

Although our analysis could end here, the BIA stated another independent reason why Guaman-Loja had failed to demonstrate her status as a refugee.  Even assuming that she had

suffered harms amounting to persecution, she adduced no evidence connecting the harassment she had experienced with government action or inaction.  In order to qualify as a refugee, Guaman-Loja must have suffered "persecution that is the direct result of government action, government-supported action, or government[] unwillingness or inability to control private conduct." Nikijuluw v. Gonzales, 427 F.3d 115, 121 (1st Cir. 2005); see also Barsoum, 617 F.3d at 79 ("The state must also be implicated, whether by participation or acquiescence, for harm to amount to persecution.").  Although a state may sanction persecution through inaction, the petitioner must demonstrate that "the government . . . would have been unwilling or unable to pursue these lines of redress on [the petitioner's] behalf." Castillo-Diaz, 562 F.3d at 28.

Once again we locate no error in the agency's factfinding on this subject.  The individuals who allegedly persecuted Guaman-Loja were without an apparent connection to the government, and Guaman-Loja never sought aid or protection from the police or local authorities.  See id. at 27-28; see also Galicia v. Ashcroft, 396 F.3d 446, 448 (1st Cir. 2005) (affirming finding that petitioner "did not show that the harassment he suffered was by the government or a group the government could not control" where petitioner did not inform authorities of his attack).

Although Guaman-Loja testified in conclusory fashion that she believed the police would not protect her unless she bribed them, she did not elaborate on this statement or explain it in any detail. Instead, she relies on a U.S. State Department country conditions report indicating that indigenous people in Ecuador face discrimination and that political violence of various kinds is a consistent problem. The BIA considered this report, but concluded that it did not demonstrate that this discrimination rose to the level of systemic persecution. The BIA also noted that the report failed to show that the "government is unable or unwilling to control" the conduct of private actors. Our review of the report reveals a sound basis for these findings, as the discrimination against indigenous individuals in Ecuador is offset at least in part by the community's growing political strength and various reforms designed to make the nation's society more open to people of indigenous descent. Consequently, the agency did not err in concluding that she had failed to establish her eligibility for asylum.

## C. Guaman-Loja's Remaining Claims

Because Guaman-Loja has failed to demonstrate that she is eligible for asylum, her claims for withholding of removal and relief under CAT also fail. See Singh v. Mukasey, 543 F.3d 1, 7 (1st Cir. 2008) (observing that claims for withholding and CAT protection "place a higher burden of proof on the petitioner than

a counterpart claim for asylum" and stating that petitioner's failure to establish eligibility for asylum similarly doomed those claims); <u>Barsoum</u>, 617 F.3d at 80-81 (same).

For the reasons stated, the petition is <u>denied</u>. **<u>So</u>** **<u>ordered.</u>**