**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 15-2018

JOSE AMADO RODRIGUEZ,

Petitioner,

v.

LORETTA E. LYNCH, ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Howard, <u>Chief Judge</u>,
Torruella and Stahl, <u>Circuit Judges</u>.

<u>Kevin MacMurray</u> and <u>MacMurray & Associates</u> for petitioner.
<u>Thankful T. Vanderstar</u>, Attorney, Office of Immigration Litigation, U.S. Department of Justice, <u>Benjamin C. Mizer</u>, Principal Deputy, Assistant Attorney General, and <u>Linda S. Wernery</u>, Assistant Director, for respondent.

July 15, 2016

**STAHL**, <u>Circuit Judge</u>.  The petitioner in this case is a Salvadoran citizen seeking asylum and withholding of removal based on his alleged past persecution and fear of future persecution.  The immigration judge and Board of Immigration Appeals denied his application and ordered him removed to El Salvador.  Because the record does not compel a contrary conclusion, we deny the petition for review.

## I.  Facts & Background

On February 20, 2010, Jose Amado Rodriguez entered the United States without a valid entry document.  A native and citizen of El Salvador, Rodriguez was charged by the Department of Homeland Security with being a removable alien, which he conceded.  Rodriguez applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

Appearing before an immigration judge ("IJ"), Rodriguez testified that he first came to the United States in 2001 and had Temporary Protected Status until 2007, when he returned to El Salvador to take care of his ill mother.  Back in El Salvador, he joined the National Republican Alliance Party ("ARENA") and worked as a driver and counselor.  In this role, Rodriguez claims to have had two troubling encounters with

- 2 -

members of an opposing party, the Farabundo Martí National Liberation Front ("FMLN").

As to the first encounter, Rodriguez testified that he was driving some people to a meeting when seven or eight individuals wearing FMLN hats and t-shirts blocked his truck with their truck and "start[ed] throwing stones at [him] and threatening [him]." The FMLN members did not get out of their truck, but allegedly said if they saw him again they would push his truck "down one of the mountains" with him in it. According to Rodriguez, the stones thrown by the FMLN members hit his truck, but none of its occupants.

In the second encounter, eight to ten months later, Rodriguez said that his truck was vandalized while it was parked in front of city hall and that the "30 to 40" people who did so said, "if we see you again, next time you [will] pay with your life." Rodriguez said he knew it was the FMLN because they left an FMLN flag.

After Rodriguez reported these incidents to the mayor, who was a member of the ARENA party, the mayor allegedly told Rodriguez that "it [would be] better if [Rodriguez] didn't do a thing . . . [and] went to another country, because [his] life was in danger." Rodriguez did not notify the police,

testifying that he did not think they would help him because they are "very corrupt[]." Rodriguez left El Salvador about three days later. He testified that he believed that his life would be in danger if he returned home.

On December 4, 2013, the IJ issued an oral decision finding Rodriguez removable as charged; denying his request for asylum under section 208 of the Immigration and Nationality Act ("the Act"), 8 U.S.C. § 1158, withholding of removal under section 241(b)(3) of the Act, 8 U.S.C. § 1231(b)(3), and protection under the CAT, 8 C.F.R. § 1208.16; and ordering him removed to El Salvador. Rodriguez appealed the decision to the Board of Immigration Appeals ("the Board"), which agreed with the IJ's determinations and dismissed the appeal. This petition for review followed.

## II. Analysis

To qualify for asylum, an alien must establish that he is a "refugee." See 8 U.S.C. § 1158(b)(1); Guaman-Loja v. Holder, 707 F.3d 119, 122 (1st Cir. 2013). A "refugee" is an alien who is unwilling or unable to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.

§ 1101(a)(42)(A). Thus, the alien bears the burden of proving past persecution or a well-founded fear of future persecution. See 8 C.F.R. § 1208.13(a).[1]

Where the Board agrees with the IJ's decision while adding its own reasons, we review both decisions. Sunarto Ang v. Holder, 723 F.3d 6, 10 (1st Cir. 2013). This Court reviews the IJ's findings of fact for substantial evidence and may reverse such findings "only if 'the evidence is such as would compel a reasonable factfinder to reach a contrary conclusion.'" McKenzie-Francisco v. Holder, 662 F.3d 584, 586 (1st Cir. 2011) (quoting Seng v. Holder, 584 F.3d 13, 17 (1st Cir. 2009)).

## A. Past Persecution

Rodriguez first contends that the record compels the conclusion that he suffered harm rising to the level of persecution that the government was unable or unwilling to control. This contention fails twice over.

First, past persecution must exceed "unpleasantness, harassment, and even basic suffering." Sinurat v. Mukasey, 537 F.3d 59, 61 (1st Cir. 2008). To constitute persecution, the harm experienced "must have reached a fairly high threshold of

---

[1] Proving past persecution gives rise to a rebuttable presumption of future persecution. Guaman-Loja, 707 F.3d at 122.

- 5 -

seriousness, as well as some regularity and frequency." Alibeaj v. Gonzales, 469 F.3d 188, 191 (1st Cir. 2006).

Rodriguez experienced two incidents, almost a year apart, falling far short of the severe, systematic type of harm that this Court has found to constitute persecution. See Anacassus v. Holder, 602 F.3d 14, 19-20 (1st Cir. 2010). While the alleged threats made on those two occasions are "indubitably unsettling, credible verbal death threats may fall within the meaning of persecution[] . . . only when the threats are so menacing as to cause significant actual suffering or harm." Lobo v. Holder, 684 F.3d 11, 18 (1st Cir. 2012) (internal quotation marks omitted). Rodriguez offered no testimony regarding the immediate impact, if any, that these threats had on him and provided little indication that those who made the threats had any intention or capability of carrying them out.

Second, petitioners must demonstrate that past persecution is "the direct result of government action, government-supported action, or government . . . unwillingness or inability to control private conduct." Guaman-Loja, 707 F.3d at 123. A petitioner's mere speculation that the police will not provide protection if contacted is not sufficient. Sunarto Ang, 723 F.3d at 11.

Here, Rodriguez did not notify the police about his encounters with the FMLN, stating that he did not believe that they would help him.  And while Rodriguez relies upon the mayor's alleged advice,[2] his brief testimony on this issue does not compel the conclusion that the government of El Salvador would have been unable or unwilling to protect him.

## B.  Future Persecution

Rodriguez also argues that the record reflects his well-founded fear of future persecution.  To make this showing independent of past persecution, he must prove that his fear is subjectively genuine and objectively reasonable.  <u>Silva</u> v. <u>Ashcroft</u>, 394 F.3d 1, 4 (1st Cir. 2005).

The IJ held that Rodriguez had not established an objectively reasonable fear of future persecution,[3] basing her findings on a 2012 Department of State Country Report, which

---

[2] Rodriguez submitted a letter from the mayor to support his claim, but this letter curiously makes no mention of the alleged problems that Rodriguez experienced with the FMLN.  Although the IJ "ha[d] some concerns regarding [Rodriguez's] credibility," she "assume[d] for the sake of th[e] decision that [he] was a credible witness," and so do we.

[3] When Rodriguez was interviewed shortly after entry, he stated that he had no fear of returning to El Salvador and had come to the United States to work and live in Texas.  Nonetheless, the IJ and the Board accepted Rodriguez's claim of subjective fear, and, again, so do we.

stated that "independent observer groups reported [that] the elections [in March 2009 and March 2012] were free and clear with few irregularities . . . [and that] there were no politically motivated killings or disappearances."

Rather than grounding his response in the record below, however, Rodriguez attempts to rely on evidence that was not before the IJ or the Board. We are limited in our review to the record upon which the appealed order of removal was based. See 8 U.S.C. § 1252(b)(4)(A); Shah v. Holder, 758 F.3d 32, 37 (1st Cir. 2014). Thus, substantial evidence supports the agency's decision, and the record does not compel the conclusion that Rodriguez established an objectively reasonable fear of future persecution in El Salvador.

### III. Conclusion

Because Rodriguez failed to prove his eligibility for asylum, he also failed to meet the higher burden required to establish eligibility for withholding of removal. See Guaman-Loja, 707 F.3d at 124. In addition, Rodriguez makes no argument on appeal regarding his claim for CAT protection, and therefore that issue is waived. See Vasili v. Holder, 732 F.3d 83, 92 (1st Cir. 2013). For these reasons, the petition for review is DENIED.