14-2517-ag
Salazar v. Lynch

BIA
Straus, IJ
A201 149 556/557/558/559/560

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of April, two thousand sixteen.

PRESENT:   JOHN M. WALKER, JR.,
　　　　　　　REENA RAGGI,
　　　　　　　CHRISTOPHER F. DRONEY,
　　　　　　　　　　*Circuit Judges.*

-----------------------------------------------------------

AMPARO SALAZAR, MARLENI NOEMI BOLANOS-SALAZAR, MELVIN BOLANOS-SALAZAR, LUCIA BOLANOS-SALAZAR, GUSTAVO ANTONIO BOLANOS-SALAZAR,

　　　　　　*Petitioners*,

　　　　　　v.　　　　　　　　　　　　　　　　　　　　14-2517-ag

LORETTA E. LYNCH, United States Attorney General,

　　　　　　*Respondent*.

-----------------------------------------------------------

APPEARING FOR PETITIONERS:    GREGORY C. OSAKWE, Hartford, Connecticut.

APPEARING FOR RESPONDENT:    REGINA BYRD, Attorney, Office of Immigration Litigation (Benjamin C. Mizer,

Principal Deputy Assistant Attorney General; Francis W. Frasier, Senior Litigation Counsel, *on the brief*), U.S. Department of Justice, Washington, D.C.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Amparo Salazar ("Salazar"), and four of her children, seek review of a June 18, 2014 decision of the BIA affirming a March 20, 2013 decision of an Immigration Judge ("IJ") denying their application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). See In re Amparo Salazar et al., Nos. A201 149 556/557/558/559/560 (B.I.A. June 18, 2014), aff'g Nos. A201 149 556/557/558/559/560 (Immig. Ct. Hartford, CT Mar. 20, 2013).[1] On appeal, Salazar argues that the agency erred in concluding that petitioners failed to establish (1) past persecution or a well-founded fear of future persecution, and (2) membership in a particular social group. We assume the parties' familiarity with the underlying facts and procedural history in this case, which we reference only as necessary to explain our decision to deny the petition.

Under the circumstances of this case, we review the IJ's decision as modified by the BIA. See Wangchuck v. Dep't of Homeland Sec., 448 F.3d 524, 528 (2d Cir. 2006). In so doing, we review factual findings only to determine whether they are supported by

---

[1] Because Salazar's children are derivative beneficiaries of her application for relief, we here focus on the mother's claim. See 8 U.S.C. § 1158(b)(3) (providing that children of alien who is granted asylum may be granted same status).

substantial evidence, and conclusions of law <u>de novo</u>. See <u>Niang v. Holder</u>, 762 F.3d 251, 253 (2d Cir. 2014). To establish eligibility for asylum or withholding of removal, an applicant must show past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. <u>See</u> 8 U.S.C. § 1101(a)(42); <u>Ramsameachire v. Ashcroft</u>, 357 F.3d 169, 178 (2d Cir. 2004). A well-founded fear of future persecution requires a subjective fear that is objectively reasonable, <u>i.e.</u>, that there is a reasonable possibility that the applicant will be singled out for persecution, or a pattern or practice of persecuting similarly situated individuals in the country of removal. <u>See</u> 8 C.F.R. § 1208.13(b)(2)(iii).

Before this court, the Salazars argue that they suffered past persecution, and have a well-founded fear of future persecution, on account of their membership in social groups, specifically (1) young Guatemalan males who resist or reject forcible gang membership; (2) young women who refuse sexual predation by the Mara Salvatrucha 13 ("MS-13"), a Guatemalan gang; and (3) mothers of such young men and women.[2] The

---

[2] Although the social groups proposed to the agency differed somewhat from those here advanced, Salazar did there maintain that, if returned to Guatemala, her sons would be forced to join one of that country's prominent gangs, and her daughters would be forced into prostitution by those same gangs, which would thereby cause Salazar herself to suffer harm. Accordingly, we reject the government's exhaustion challenge to Salazar's arguments. <u>See</u> <u>Lin Zhong v. U.S. Dep't of Justice</u>, 480 F.3d 104, 107 n.1, 122–23 (2d Cir. 2007) (holding that issue exhaustion under 8 U.S.C. § 1252(d)(1) is not jurisdictional, and that it is in court's discretion to review issue not presented to BIA); <u>see also</u> <u>Paloka v. Holder</u>, 762 F.3d 191, 199 (2d Cir. 2014) (explaining that "refined" particular social group could be considered on remand because it was "specific" and "subsidiary" to broad class first proposed).

arguments fail on the merits.[3]

First, the agency rejected the resistance-to-gangs social group as foreclosed by Matter of E-A-G-, 24 I. & N. Dec. 591, 594 (B.I.A. 2008) (rejecting opposition to gang membership as indicative of particular social group), and Matter of S-E-G-, 24 I. & N. Dec. 579, 586–88 (B.I.A. 2008) (holding that neither Salvadoran youth resisting gang recruitment nor their family members constituted particular social group because they do not share recognizable and discrete attributes). As the agency itself has held, neither of these decisions should be read as "a blanket rejection of all factual scenarios involving gangs." Matter of M-E-V-G-, 26 I. & N. Dec. 227, 251 (B.I.A. 2014). Nevertheless, we agree that the gang-affected group proposed here does not constitute a particular social group. Among other things, Salazar failed to offer any evidence that individuals who oppose forced gang recruitment are viewed by Guatemalan society as a distinct group. See Matter of W-G-R-, 26 I. & N. Dec. 208, 222 (B.I.A. 2014) (explaining that cognizable social group must be (1) composed of members sharing immutable

---

[3] In analyzing Salazar's claims we assume, without deciding, that a mother's fear that her children will be harmed on account of a protected ground is sufficient to establish her own asylum claim because Salazar has, in any event, failed to establish a well-founded fear that her children will be subjected to harm based on a protected ground, i.e., membership in groups opposed to forcible gang recruitment and prostitution. See Kone v. Holder, 596 F.3d 141, 153 n.11 (2d Cir. 2010) (noting that "non-derivative theory of asylum grounded in a parent's psychological harm in 'being forced to witness the pain and suffering of her daughter'" is open issue in this circuit, and declining to reach it (quoting Abay v. Ashcroft, 368 F.3d 634, 642 (6th Cir. 2004))); cf. Abay v. Ashcroft, 368 F.3d at 642 (concluding that mother had well-founded fear that daughter would be forced to undergo female genital mutilation where, among other things, daughter had been threatened with FGM, and FGM was "nearly universal in Ethiopia").

4

characteristic, (2) defined with particularity, and (3) socially distinct, in rejecting group consisting of foresworn members of Mara 18 gang where, among other concerns, record contained no evidence that Salvadoran society considers such gang members distinct social group).[4]  Indeed, the record is devoid of documentary evidence discussing the treatment of individuals who refuse to join Guatemalan gangs as opposed to the rest of Guatemalan society.  See id. (noting, in concluding that proposed group did not satisfy social distinction requirement, that record contained "little documentation discussing the treatment or status of former gang members").

No different conclusion is warranted by cases from other circuits addressing gang-affected groups with distinguishing characteristics not present here.  See Henriquez-Rivas v. Holder, 707 F.3d 1081, 1093–94 (9th Cir. 2013) (concluding that Salvadoran witnesses who testified against gang members constitute particular social group); Garcia v. Att'y Gen., 665 F.3d 496, 504 (3d Cir. 2012) (same regarding witnesses who testified against Guatemalan gangs); Crespin-Valladares v. Holder, 632 F.3d 117, 125 (4th Cir. 2011) (concluding that family members of witnesses who testify against MS-13 gang members constitute particular social group); Urbina-Mejia v. Holder, 597 F.3d 360, 366–67 (6th Cir. 2010) (concluding that former gang members constitute particular social group); Benitez Ramos v. Holder, 589 F.3d 426, 431 (7th Cir. 2009) (same regarding former

---

[4] Insofar as Salazar challenges the BIA's particularity and social distinction requirements as inconsistent with the statutory text, that argument is foreclosed by our decision in Ucelo-Gomez v. Mukasey, 509 F.3d 70, 72–74 (2d Cir. 2007) (affording Chevron deference to BIA interpretation of statutory "particular social group" requirement); accord Paloka v. Holder, 762 F.3d at 195–96.

members of MS-13 gang). While some authority supports Salazar's argument that resisted gang recruitment can delineate a particular social group, see Valdiviezo-Galdamez v. Att'y Gen., 663 F.3d 582, 608–09 (3d Cir. 2011) (declining to afford deference to BIA's particularity and social visibility requirements, and remanding for further consideration of claim of persecution based on proposed social group of Honduran youth who have been actively recruited by gangs but refused to join), our own court is among those to have concluded otherwise, see, e.g., Oliva-Flores v. Holder, 477 F. App'x 774, 775–76 (2d Cir. 2012) (concluding that young Guatemalan men who resisted gang recruitment lacked requisite particularity and social visibility); Paucar-Sarmiento v. Holder, 482 F. App'x 656, 658–59 (2d Cir. 2012) (same regarding young Ecuadorian men); accord Rodas-Orellana v. Holder, 780 F.3d 982, 991 (10th Cir. 2015) (same regarding El Salvadoran men); De Abarca v. Holder, 757 F.3d 334, 337 (1st Cir. 2014) (concluding that mothers of individuals who resisted gang activity did not constitute cognizable social group). Thus, we identify no error in the agency's rejection of Salazar's gang-opposition claim.

Second, the agency reasonably concluded that Salazar failed to establish past persecution or a well-founded fear of future persecution in relation to her forced prostitution claim.[5] We agree with the agency that the "unfulfilled threats" alleged by

---

[5] Although Salazar did not argue before the BIA that the IJ erred in concluding that she had not established past persecution or a well-founded fear of future persecution, the BIA nonetheless addressed these issues and, thus, we may consider them here. See Xian Tuan Ye v. Dep't of Homeland Sec., 446 F.3d 289, 296–97 (2d Cir. 2006) (holding that where

6

Salazar did not constitute past persecution, <u>Gui Ci Pan v. Att'y Gen.</u>, 449 F.3d 408, 412–13 (2d Cir. 2006), and, in any event, those threats related to her sons' opposition to gang recruitment; her daughters have never been threatened with forced prostitution. The agency also reasonably concluded that Salazar failed to establish that any fear of her daughters being forced into prostitution, even if subjectively reasonable, was objectively reasonable. The documentary evidence does not manifest a reasonable probability that Salazar's daughters would be forced into prostitution if returned to Guatemala. Rather, the articles submitted by Salazar discuss this risk with respect to street children, former victims of domestic abuse, and girls from disintegrated families in poor, rural areas of Central America. Salazar does not contend that her daughters fall into any of these categories. <u>Cf.</u> <u>Paloka v. Holder</u>, 762 F.3d 191, 194, 198–99 (2d Cir. 2014) (remanding for further BIA consideration of forced sex trafficking claim where, among other things, record showed that forced prostitution through sex trafficking "occurs relatively often in Albania," particularly with respect to women, like petitioner, who were between ages of 15 and 25). Salazar's contention that her two cousins were tricked into prostitution, without more, does not compel a contrary conclusion. <u>See</u> <u>Jian Xing Huang v. INS</u>, 421 F.3d 125, 128–29 (2d Cir. 2005) (explaining that to be objectively reasonable, fear must have "solid support" in record and be more than speculative). Accordingly, the agency appropriately rejected this claim.

---

BIA addresses issues not raised by petitioner, those issues are exhausted and may be considered by this court).

Having failed to meet her burden to establish eligibility for asylum, Salazar necessarily did not meet her burden for withholding of removal.  See Ramsameachire v. Ashcroft, 357 F.3d at 183.  Moreover, as the government argues and Salazar does not dispute, she failed to appeal from the IJ's denial of her CAT claim and, therefore, that claim is unexhausted.  See 8 U.S.C. § 1252(d)(1); Karaj v. Gonzales, 462 F.3d 113, 119 (2d Cir. 2006).

We have considered Salazar's remaining arguments and conclude that they are without merit.  Accordingly, the petition for review is DENIED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court